**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| PENNYSAVER USA PUBLISHING LLC, *et al.*,[1] | Case No. 15-11198 (CSS) |
| Debtors. | (Jointly Administered) |
| DON A. BESKRONE, Chapter 7 Trustee of PennySaver USA Publishing, LLC, *et al.*, | |
| Plaintiff, | |
| v. | Adv. Proc. No.: 17-50530 (CSS) |
| OPENGATE CAPITAL GROUP, LLC, OPENGATE CAPITAL MANAGEMENT, LLC, PENNYSAVER INVESTORS, LLC, ANDREW NIKOU, JAY YOOK, DANIEL ABRAMS, ALANA S. CHAFFIN, VIJAY K. MONY, and VIRGINIA ANNE THORNTON, | **Ref. Adv. Docket Nos. 9, 12, & 17** |
| Defendants. | |

**PLAINTIFF'S OMNIBUS BRIEF IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS ADVERSARY COMPLAINT**

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pennysaver USA, LLC (7098); Pennysaver USA Printing, LLC (6144); Pennysaver USA Publishing, LLC (1162); Orbiter Properties, LLC (0851); Monthly Mailer, LLC (2804). The Debtors' mailing address was 2830 Orbter Street, Brea, California 92821.

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................................................1

II.  FACTUAL BACKGROUND..........................................................................2

   A.  The Parties ...........................................................................................3

   B.  The Leveraged Buy-Out and Systematic Looting of Pennysaver .................3

III.  ARGUMENT................................................................................................7

   A.  The Rule 8 "Notice Pleading" Standard.........................................................7

   B.  The Standard of Review on Rule 12(b)(6) Dismissal Motions .....................10

   C.  The Complaint States Plausible Claims for Breach of Fiduciary Duties ......12

     1.  The Defendants Owed Fiduciary Duties to the Debtors ..............................13

     2.  The Complaint Contains Ample Factual Allegations that
        Defendants Breached their Fiduciary Duties .............................................17

     3.  The Trustee Need Not Plead Around Affirmative Defenses
        Based on the LLC Operating Agreements .................................................19

     4.  The Trustee Has Standing to Bring Both Fiduciary Duty Counts...............19

   D.  The Complaint States Plausible Claims for Avoidance and
      Recovery of "Fraudulent" Transfers ...........................................................22

     1.  Rule 9(b) Does Not Apply to the State and Federal
        Fraudulent Transfer Counts.....................................................................22

     2.  The Trustee Need Not Specify Which Debtor Made Each
        Challenged Payment to State a "Plausible" Claim for Relief ......................25

     3.  Any "Presumption" of Reasonably Equivalent Value for the
        OPG Employee Payments is Overcome by Well-Pleaded Facts..................28

   E.  The Complaint States Plausible Claims for Avoidance and
      Recovery of Preferences and Insider Preferences.........................................30

     1.  The Complaint Adequately Pleads Defendants' "Insider" Status ................31

     2.  Again, the Trustee Need Not Specify Which Debtor Made
        Each Challenged Payment to State a "Plausible" Claim .............................33

3.    The Allegations Regarding "Antecedent Debt" Are Sufficient ...................................35

F.    The Accounting Count is Proper ..................................................................................37

G.    The 502(d) Count is Proper .........................................................................................37

IV.  CONCLUSION..................................................................................................................40

<u>EXHIBIT A</u>: Excerpt from Complaint in *AgFeed I*

## TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford*,
    554 F. Supp. 2d 538 (D. Del. 2008) ................................................................19

*In re AgFeed USA, LLC*,
    546 B.R. 318 (Bankr. D. Del. 2016) ........................................................... 26, 27

*In re AgFeed USA, LLC*,
    558 B.R. 116 (Bankr. D. Del. 2016) ..................................................... 18, 26, 29

*Anderson News, LLC v. News Group, Inc. (In re Anderson News, LLC)*,
    Adv. No. 11-53979, 2012 Bankr. LEXIS 3855 (Bankr. D. Del. Aug. 22, 2012) ...................33

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................... 8, 10, 11

*Astropower Liquidating Trust v. Xantrex, Inc. (In re AstroPower Liquidating Trust)*,
    335 B.R. 309 (Bankr. D. Del. 2005) ................................................................25

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*,
    473 B.R. 525 (Bankr. D. Del. 2012) ................................................................11

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*,
    No. CIV. A. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009)...................... 14, 15, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................... 1, 8, 9, 10

*Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*,
    No. CIV.A. 16630-NC, 2001 WL 1641239 (Del. Ch. Dec. 4, 2001)....................................14

*In re Bridgeport Holdings, Inc.*,
    388 B.R. 548 (Bankr. D. Del. 2008) ................................................................18

*Burtch v. Huston (In re USDigital, Inc.)*,
    443 B.R. 22 (Bankr. D. Del. 2011) ........................................................... 28, 30

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ................................................................12

*Cargill, Inc. v. JWH Special Circumstance LLC*,
    959 A.2d 1096 (Del. Ch. 2008)................................................................14

*Carson Optical Inc. v. eBay Inc.*,
    202 F. Supp. 3d 247 (E.D.N.Y. 2016) ...................................................................36

*In re Conex Holdings, LLC*,
    514 B.R. 405 (Bankr. D. Del. 2014) .....................................................................18

*Conley v. Gibson*,
    355 U.S. 41 (1957) ....................................................................................... 8, 9, 10

*In re Crucible Materials Corp.*,
    Adv. No. 10-55178, 2011 WL 2669113 (Bankr. D. Del. July 6, 2011). ................33

*In re DBSI, Inc.*,
    445 B.R. 351 (Bankr. D. Del. 2011) .....................................................................18

*In re Evergreen Energy, Inc.*,
    546 B.R. 549 (Bankr. D. Del. 2016) ............................................................... 10, 11

*Feeley v. NHAOCG, LLC*,
    62 A.3d 649 (Del. Ch. 2012) ................................................................................14

*Forman v. Dragon Key Co. (In re Linens Holding Co.)*,
    Adv. Pro. No. 11-50121, 2011 Bankr. LEXIS 5015 (Bankr. D. Del. Dec. 29, 2011) ............33

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .................................................................................10

*Giuliano v. Haskett (In re MCG Ltd. P'ship)*,
    545 B.R. 74 (Bankr. D. Del. 2016) ...................................................................33-34

*Gold v. Winget (In re NM Holdings Co., LLC)*,
    407 B.R. 232 (Bankr. E.D. Mich. 2009) ........................................................... 27, 28

*In re Golden Guernsey Dairy, LLC*,
    548 B.R. 410 (Bankr. D. Del. 2015) ................................................................. 20, 21

*Koch Ref. v. Farmers Union Cent. Exch., Inc.*,
    831 F.2d 1339 (7th Cir. 1987) ......................................................................... 21, 22

*Kuroda v. SPJV Holdings, L.L.C.*,
    No. CIV.A. 4030-CC, 2010 WL 925853 (Del. Ch. Mar. 16, 2010) .......................16

*North American Catholic Education Programming Foundation, Inc. v. Gheewalla*,
    930 A.2d 92 (Del. 2007) ......................................................................................20

*Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings, Inc.)*,
    Adv. No. 15-51069, 2017 Bankr. LEXIS 1150 (Bankr. D. Del. Apr. 27, 2017) .............. 25, 33

*North American Steel Connection, Inc. v. Watson Metal Prod. Corp.*,
  515 F. App'x 176 (3d Cir. 2013) ......................................................................16

*OHC Liquidating Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*,
  325 B.R. 696 (Bankr. D. Del. 2005) ................................................................25

*OHC Liquidating Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
  340 B.R. 510 (Bankr. D. Del. 2006),................................................................34

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001) ............................................................................11

*In re Pitt Penn Holding Co.*,
  484 B.R. 25 (Bankr. D. Del. 2012), ................................................................29

*In re Primedia Inc. Derivative Litig.*,
  910 A.2d 248 (Del. Ch. 2006)..........................................................................11

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ............................................................................11

*Shubert v. Lucent Techs. Inc. (In re Winstar Communs., Inc.)*,
  554 F.3d 382 (3d Cir. 2009) ............................................................................32

*U.S. Express Lines Ltd. v. Higgins*,
  281 F.3d 383 (3d Cir. 2002) ...............................................................10, 11, 19

*In re USACafes, L.P. Litig.*,
  600 A.2d 43 (Del. Ch. 1991) ...............................................13, 14, 15, 16

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*,
  288 B.R. 189 (Bankr. D. Del. 2003) ...........................................................33, 34

*Vila v. Inter-Am. Inv. Corp.*,
  570 F.3d 274 (D.D.C. 2009)............................................................................10

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999)........................................................................10

*In re Washington Mutual, Inc.*,
  Adv. No. 10-53158, 2013 WL 3757330 (Bankr. D. Del. July 16, 2013)..............33

*In re Worldwide Direct, Inc.*,
  No. 99-108(MFW), 2000 WL 33712474 (Bankr. D. Del. Nov. 22, 2000) .......37-38

## STATUTES, RULES & REGULATIONS

11 U.S.C. § 101(2)(A)......................................................................................31

11 U.S.C. § 101(31) ....................................................................................................... 31

11 U.S.C. § 502(d) ................................................................................................... 38, 39

11 U.S.C. § 502(h) ........................................................................................................ 39

11 U.S.C. § 544 ................................................................................... 21, 22, 30, 38

11 U.S.C. § 547 ............................................................................................... 31, 38

11 U.S.C. § 548 ..................................................................................................... 24, 38

11 U.S.C. § 549 ............................................................................................................. 38

11 U.S.C. § 550 ............................................................................................................. 38

Cal. Civil Code § 3439.04 .......................................................................................... 23

Cal. Civil Code § 3439.05(a) ...................................................................................... 23

6 *Del. C.* 1301(1)(a) .................................................................................................. 31

6 *Del. C.* 1301(7) ....................................................................................................... 31

6 *Del. C.* 1303(a) ....................................................................................................... 35

6 *Del. C.* 1304 ............................................................................................................. 23

6 *Del. C.* 1305(a) ....................................................................................................... 23

6 *Del. C.* § 18-1101 .................................................................................................... 13

Fed. R. Bankr. P. 7008 ............................................................................................... 7

Fed. R. Bankr. P. 7012(b) ........................................................................................... 10

Fed. R. Civ. P. 8 .......................................................................................................... 7

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 8

Fed. R. Civ. P. 8(e) ............................................................................................. 10, 28, 30

Fed. R. Civ. P. 9(b) ..................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ...................................................................................... *passim*

Fed. R. Civ. P. 12(d) ................................................................................................... 11

Fed. R. Civ. P. 84 ........................................................................................................ 8

Fed. R. Civ. P. 84, Form 21 ...................................................................................................... 9, 25

**SECONDARY SOURCES**

Uniform Fraudulent Conveyances Act (UFCA) ..................................................................... 22, 24

Uniform Fraudulent Transfer Act (UFTA) ............................................................................. *passim*

Uniform Voidable Transactions Act (UVTA) ........................................................................ *passim*

UVTA § 4, Comment 8 .............................................................................................................. 23-24

UVTA § 14, Comment 10 .......................................................................................................... 24, 25

UVTA § 15, Comment 1 ................................................................................................................. 23

Plaintiff Don A. Beskrone, the duly-appointed chapter 7 trustee (the "Trustee"), by and through his undersigned counsel, hereby submits this omnibus Brief in opposition to (i) the Rule 12(b)(6) dismissal motions filed by Defendants Abrams, Chaffin, Mony, and Thornton (collectively, the "OpenGate Employees") [Adv. D.I. 9] and Defendants OpenGate Capital Group, LLC, OpenGate Capital Management, LLC, and Pennysaver Investors, LLC (collectively, "OpenGate") [Adv. D.I. 12] (the "Motions"), and (ii) the joinder in the Motions filed by Defendants Nikou and Yook [Adv. D.I. 17] (the "Joinder").[1]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in motions to dismiss the Trustee's *Complaint* [Adv. D.I. 1] (the "Complaint").  In further support of his Complaint, the Trustee respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

The Motions are an extreme example of post-*Twombly* Rule 12(b)(6) motion practice run amok.  The Complaint sets forth a complete, coherent, factually consistent narrative about the Defendants' thorough and systematic looting of the Debtors prepetition, supported with detailed financial analysis where necessary (e.g., with respect to the question of the Debtors' insolvency), and references (or outright screenshots) to several remarkable, "smoking-gun" emails that were uncovered by the Trustee in his pre-filing investigation.

---

[1] The Joinder simply incorporates the Motions by reference, despite that the bulk of the arguments in the Motions would not apply to Nikou or Yook (either because they deal with Counts of the Complaint against Defendants other than Nikou and Yook, or because they turn on factual and legal distinctions applicable to OpenGate or the OpenGate Employees, but not to Nikou or Yook).  Since the Joinder rises and falls with the Motions, the focus of this Omnibus Answering Brief will be the Motions.

There is enough factual detail in the Complaint—the who, what, where, when, why, and how—to support a long-form news article like one might read in *The Economist* or *Rolling Stone*, or a television news journal piece like one might see on *Dateline* or *48 Hours*.  Yet by way of the Motions, the Defendants essentially ask this Court to conclude that the Complaint fails to provide them even the most basic notice of the facts underlying the Trustee's claims against them, rendering them unable to formulate their answers to the Complaint.  This borders on specious.

In addition to ignoring the well-pleaded facts in the Complaint, the Defendants ignore the plain language of the Delaware LLC Act and well-established Delaware Chancery Court precedent recognizing that persons in control of an LLC can be subject to, and held liable for breaches of, fiduciary duties to the LLC.  Unburdened by actual Delaware law, the Defendants urge the Court to hold that the sole source of duties and liabilities in connection with the operation of an LLC is its operating agreement—a proposition that, if true, would facilitate OpenGate's apparent *modus operandi* of acquiring struggling companies, draining them of cash, and leaving their empty husks on this Court's doorstep, because the people and entities who actually pull the strings in this scheme are not necessarily the ones specified in the applicable operating agreements.  But Delaware fiduciary and trust law is not so easily manipulated.

For the reasons discussed below, the Motions should be denied and this litigation should proceed to the discovery phase on all of the Trustee's causes of action.

## II.    FACTUAL BACKGROUND

The factual background is set forth at length in the first 87 paragraphs of the Complaint. Below is a synopsis of the most relevant facts for purposes of the Motions, which is qualified in its entirety by reference to the Complaint.

A.     **The Parties**

Collectively, the Debtors formed the substance of Pennysaver, a business founded in 1962 that published a "shopper"—i.e., a weekly California newspaper that provided advertising space for local business, as well as classified ads.  (Compl. ¶ 8.)  The Debtors filed for chapter 7 bankruptcy relief in this Court on May 29, 2015 (the "Petition Date").  (*Id.* ¶ 1.)

OpenGate is a private equity firm that acquired Pennysaver in September 2013 from then-owner Harte-Hankes, Inc., in a leveraged buy-out that included $4 million in equity and $20.5 million of new secured debt from Capital One Business Credit Corp. ("COBC").  (*Id.* ¶¶ 5, 11.)

Nikou is the founder, managing partner, and CEO of OpenGate, who at all times relevant to the Complaint had operational control over OpenGate and its affiliated and portfolio entities, including the Debtors.  (*Id.* ¶ 29.)  At all times relevant to the Complaint, Yook was a senior executive and "Partner" of OpenGate, and Nikou's "right hand man," responsible for transaction execution and portfolio management, which included, from time to time, control and direction of the Debtors' senior management.  (*Id.* ¶ 32.)  The OpenGate Employees were executives of OpenGate at all times relevant to the Complaint, were on the Debtors' payroll from March 2014 through April 2015, and, from time to time, controlled and directed the Debtors' senior management.  (*Id.* ¶¶ 30, 31, 33, 34.)

B.     **The Leveraged Buy-Out and Systematic Looting of Pennysaver**

To acquire financing for its leveraged acquisition of Pennysaver, OpenGate presented putative lenders with rosy financial projections for Pennysaver that were premised upon a labor cost savings plan that it never attempted to implement (and likely, never intended to), and that were consistently more bullish about Pennysaver's future revenues than OpenGate's own

internal projections (e.g., by showing the banks EBITDA 27-54% higher than the internal

projections).  (Compl. ¶¶ 42-52.)  Whether measured by going-concern value or liquidation

value, the Debtors were never worth more than the amount of the COBC debt—they were

insolvent from day one, and OpenGate was fully aware of that fact.  (*Id.* ¶ 56.)

On or shortly after the Closing Date for the Pennysaver acquisition, OpenGate caused the

Debtors to make $2 million in "[d]istributions to Member" to OpenGate (the "Dividend").  In

addition OpenGate caused the Debtors to pay $868,000 of closing expenses in connection with

the acquisition (the "Closing Expenses").  The Debtors' payment of the Dividend and the

Closing Expenses was gratuitous—the Debtors received no value or other consideration in

exchange for these payments.  (Compl. ¶¶ 58-59.)

In April 2014, OpenGate caused the Debtors to distribute approximately $1.8 million to

OpenGate for alleged tax obligations (the "Tax Payment").  The Debtors received no value or

other consideration in exchange for the Tax Payment.  (Compl. ¶ 60.)

Shortly after the Closing Date, OpenGate caused one or more of the Debtors to enter into

a management agreement with OpenGate whereby OpenGate was to provide certain

"management" services to the Debtors, in exchange for a monthly "fee" of $83,333.33 (the

"Management Fees").  OpenGate caused the Debtors to pay Management Fees from October

2013 through December 2014, but it did not provide any management services—rather, it used

the management agreement as a means to siphon cash out of Pennysaver.  (Compl. ¶¶ 61-63.)

On January 9, 2014, Defendant Yook advised the Debtors' then-CEO, Liz Gaier, that

Fusion Paperboard, one of OpenGate's other portfolio companies, was having liquidity problems

and that the Debtors would need to provide it with a 30-day loan for $500,000.  Realizing that a

loan to an OpenGate affiliate would violate the Debtors' debt covenants with COBC, however,

OpenGate ginned up an "Agreement" to be executed by the Debtors and Fusion Paperboard, which purported to allow the Debtors to sell scrap newsprint to Fusion Paperboard at 5% over "prevailing rates," in return for paying Fusion Paperboard a $500,000 "advance fee." This agreement made no economic sense for the Debtors because it would take them approximately 15 years to break even, and no rational economic actor—particularly one facing the Debtors' cash constraints—would have paid an "advance fee" of $500,000 to secure the modest economic benefits provided by the agreement. Against the advice of counsel (who warned that the agreement could be viewed as a disguised loan violated the Debtors' debt covenants with COBC), Yook pressed forward, advising in an email that "[u]ltimately, what I care about is everyone cooperating and working on behalf of PennySaver's owners – i.e., OpenGate." The Debtors and Fusion Paperboard executed their purported agreement on January 14, 2014, and the Debtors wired Fusion Paperboard $500,000 that same day (the "Fusion Loan"). (Compl. ¶¶ 70-76.)

Commencing in March 2014, and over the vehement (and repeated) objections from the Debtors' senior management, OpenGate caused the Debtors to put the four OpenGate Employees on their payroll. The OpenGate Employees were paid generous salaries and bonuses despite not working or performing any material amount of services for, or otherwise providing any material value to, the Debtors. And starting in 2015, while the Debtors were in the midst of a liquidity crisis and their management was instituting numerous cost-cutting measures, OpenGate directed the Debtors to give each of the OpenGate Employees *a raise*! In email exchange included in the Complaint, Ms. Gaier, expressed concern to Yook about cash to keep the company going, and disappointment that she had just eliminated $377,000 of her own managers' bonuses to save costs only to have Pennysaver turn around and pay bonuses to the OpenGate Employees. Yook

told her to stay in her lane: "[Y]ou need to delineate OG personnel from PS personnel, regardless of how the bonuses for the OG employees are being paid."  (Compl. ¶¶ 64-69.)

In July 2014, Fusion Paperboard went under while still owing the Debtors $300,000, thus exposing OpenGate to charges that it had improperly caused the Debtors to advance money to Fusion Paperboard.  To deal with that risk, OpenGate promulgated a new version of history, where money had never been loaned or paid as an advance fee to Fusion Paperboard, but instead the $500,000 was retroactively characterized on the Debtors' books as a payment for a "sublease" from Pennysaver USA, LLC and OpenGate Capital Management LLC, whereby Pennysaver would lease "two office rooms" in OpenGate's headquarters' suites.  At some time in July or August 2014, the Fusion Paperboard "Agreement" morphed into a 55-month, $9,080/month "sublease" dated "as of" January 1, 2014, with a 24-month security deposit and 31 months of prepaid rent, for a grand total of $500,000.05.  On August 12, 2014, Defendant Thornton gave detailed instructions to the Debtors' VP of finance to enter back-dated entries into the Debtors' ledgers to reflect the above payments, and then further instructed him to back-date additional entries for July to reflect an "amended sublease," which showed total payments of $295,000 (since Fusion Paperboard appears to have paid the Debtors approximately $205,000). These instructions were in an email that is included in the Complaint (with the subject line: "RE: Fusion deposit," in case there were any doubt what it was really about).  (Compl. ¶¶ 77-82.)

Commencing in October 2014, OpenGate required the Debtors to start paying OpenGate $7,500 per month for IT consulting services by Matthew Ji (the "IT Payments"), an OpenGate employee who performed few or no IT services for the Debtors, but did perform them for OpenGate.  (*Id.* ¶¶ 83-84.)

By the end of 2014, the Debtors were running short of cash because of the millions the Defendants had taken out of the company.  OpenGate knew this, and was repeatedly warned about the consequences by the Debtors' operating management, but it kept withdrawing cash as long as there was cash to withdraw.  Finally, in May 2015, with the Debtors' cash all but gone, OpenGate closed down the Debtors' operations without any advance notice, leaving employees and creditors holding the bag.  This appears to be a repeated pattern for OpenGate, as it has been charged with looting other insolvent companies in the same manner, and then shuttering the facilities and abandoning the employees without warning.  (Compl. ¶¶ 24 -25.)

## III.    ARGUMENT

Some additional background regarding the standards governing pleadings and Rule 12(b)(6) motions is necessary to frame the Trustee's response to the issues raised in the Motions. That background is covered below, followed by the Trustee's response to the issues raised with respect to the various groupings of claims for relief in the Complaint, namely: the Fiduciary Duty Counts, State and Federal Fraudulent Transfer Counts, and State and Federal Preference Counts (all as defined below); the count for an accounting of property received by the Defendants; and the count for disallowance of claims under section 502(d) of the Bankruptcy Code.  As discussed below, there is nothing wrong with any of the claims for relief in the Complaint, and all should be permitted to go forward to discovery.

### A.    The Rule 8 "Notice Pleading" Standard

Federal Rule of Civil Procedure 8, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008,[2] requires that a complaint contain a "short and

---

[2] As discussed in section IV(D)(1) below, the heightened pleading standard in Federal Rule of Civil Procedure 9(b) does not apply (though even if it did, it would be satisfied).

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). The purpose of this "short and plain statement" is to "give the defendant fair notice of

what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S.

41, 47 (1957), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 562-63 (2007). In order to "show[] that the pleader is entitled to relief" as required by

8(a)(2), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 570). A pleading states a plausible claim for relief if its "factual content

. . . allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 679.

The brevity and simplicity contemplated by Rule 8(a)(2) are demonstrated by the

illustrative forms appended to the Federal Rules of Civil Procedure (the "FRCP"), which are

sufficient as a matter of law. Fed. R. Civ. P. 84. Form 21 is particularly instructive in this case:


*[remainder of page intentionally left blank]*

**Form 21.  Complaint on a Claim for a Debt and to Set Aside a Fraudulent Conveyance
       Under Rule 18(b).**

(Caption – See Form 1.)

1.      (Statement of Jurisdiction — See Form 7.)

2.      On __*date*__ , defendant ____*name*____ signed a note promising to pay to the plaintiff on ___*date*___
        the sum of $ _____ with interest at the rate of ___ percent.  [The pleader may, but need
        not, attach a copy or plead the note verbatim.]

3.      Defendant __*name*__ owes the plaintiff the amount of the note and interest.

4.      On __*date*__ , defendant __*name*__ conveyed all defendant's real and personal property _*if less*_
        _*than all, describe it fully*_ to defendant __*name*__ for the purpose of defrauding the plaintiff and
        hindering or delaying the collection of the debt.

Therefore, the plaintiff demands that:

(a)     judgment for $ _____, plus costs, be entered against defendant(s) __*name(s)*__ ; and

(b)     the conveyance to defendant __*name*__ be declared void and any judgment granted be
        made a lien on the property.

(Date and sign – See Form 2.)

Once fair notice of the nature and basis of the plaintiff's claims is provided, "the liberal

opportunity for discovery and the other pretrial procedures established by the [FRCP]" allow the

parties "to disclose more precisely the basis of both claim and defense and to define more

narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48.  The plaintiff is then free to

support its claim "by showing any set of facts consistent with the allegations in the complaint."

*Twombly*, 550 U.S. at 563.  The FRCP thus "reject the approach that pleading is a game of skill

in which one misstep . . . may be decisive to the outcome" and instead view pleading as a means

"to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 47-48; *accord* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").[3]

### B.    The Standard of Review on Rule 12(b)(6) Dismissal Motions

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), permits dismissal of claims for relief within a complaint "for failure to state a claim on which relief can be granted."  The purpose of a motion to dismiss under Rule 12(b)(6) "is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case."  *In re Evergreen Energy, Inc.*, 546 B.R. 549, 557 (Bankr. D. Del. 2016) (internal quotation marks, citation omitted).  Thus, when considering a Rule 12(b)(6) motion, a court must accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  In addition, the complaint should be read as a whole, not parsed piece-by-piece.  *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 285 (D.D.C. 2009) (holding complaint's factual allegations should be "[v]iewed in their totality").  In this review, "[t]he question 'is not whether plaintiffs' claims will ultimately succeed on their merits, but whether the facts as pled are sufficient to warrant discovery' . . . ."

---

[3] In *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009), the Third Circuit Court of Appeals observed that, in light of *Twombly* and *Iqbal*, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading."  The continued viability of the FRCP pleading forms (including Form 21 shown above) notwithstanding subsequent amendments to other provisions of the FRCP, however, suggest the FRCP's "notice pleading" regime has not been abandoned, just refined.  *Accord Twombly*, 550 U.S. at 561-63 and n.8 (explaining *Conley*'s "no set of facts" language had been read in isolation and misunderstood by subsequent courts and commentators, and that the language was in reality "an incomplete, negative gloss on an accepted pleading standard" that "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 552

(Bankr. D. Del. 2012) (Sontchi, J.) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471,

471-72 (3d Cir. 2001)).  The burden of demonstrating that dismissal is appropriate is on the

movant.  *Evergreen*, 546 B.R. at 557.

As a general rule, the court may not consider matters extraneous to the pleadings without

converting the Rule 12(b)(6) dismissal proceedings to summary judgment proceedings subject to

Rule 56.  *Higgins*, 281 F.3d at 388; *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule

12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the

motion must be treated as one for summary judgment under Rule 56.  All parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion.").  There is a

limited exception to this rule for documents that are "*integral to or explicitly relied* upon in the

complaint," which may be considered without converting to a summary judgment posture.

*Higgins*, 281 F.3d at 388 (emphasis in original; internal quotation marks, citation omitted).  The

rationale for this exception is that "the primary problem raised by looking to documents outside

the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice

and has relied upon these documents in framing the complaint."  *Schmidt v. Skolas*, 770 F.3d

241, 249 (3d Cir. 2014) (internal quotation marks, citation omitted).  Thus, the exception only

applies where "the claims in the complaint are *based on* [the] extrinsic document."  *Id.* (emphasis

added; internal quotation marks, citations omitted).

Ultimately, evaluation of a complaint upon a Rule 12(b)(6) motion is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679.  In the Third Circuit, courts follow a three-step process to determine the

sufficiency of a complaint in the face of a Rule 12(b)(6) challenge:

> First, the court must take note of the elements a plaintiff must plead
> to state a claim. Second, the court should identify allegations that,
> because they are no more than conclusions, are not entitled to the
> assumption of truth.  Finally, where there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (internal quotation marks,

citations omitted).  As discussed below, the claims asserted in the Complaint here easily survive

this process.

### C.    The Complaint States Plausible Claims for Breach of Fiduciary Duties

Counts XV and XVI of the Complaint (the "Fiduciary Duty Counts") assert claims for

breach of fiduciary duty against each of the Defendants, based upon their collective exercise of

control over the Debtors to cause them to pay the Dividend, Closing Expenses, IT Payments, Tax

Payment, Monthly Management Fees, and OPG Employee Payments, and to make the Fusion

Loan, all in contravention of the Debtors' interests and to the Debtors' detriment.  Count XV

asserts these fiduciary duty claims in the Trustee's capacity as representative of the Debtors

themselves.  Count XVI asserts the same fiduciary duty claims in the Trustee's capacity as

representative of the Debtors' creditors (e.g., by way of the creditor standing conferred on him

by the Bankruptcy Code's "strong-arm" power), to the extent that creditors are the beneficiaries

of, and thus entitled to enforce, the fiduciary duties owed to the Debtors by reason of the

Debtors' insolvency.

Defendants argue that the Fiduciary Duty Counts fail as a matter of law because (i) the

Defendants were not fiduciaries of the Debtors; (ii) even if Defendants did owe fiduciary duties

to the Debtors, the Complaint fails to allege facts that the Defendants breached such duties;

(iii) the Complaint fails to anticipate and plead around affirmative defenses the Defendants

apparently intend to raise based on the Debtors' operating agreements (which they do not attach

to the Motions or their briefs); and (iv) the Trustee's assertion of fiduciary duty claims on behalf

of creditors is improper.  As discussed below, however, (i) Delaware law does not restrict

fiduciary duty claims to the extent that Defendants argue, (ii) the Complaint contains ample

factual allegations to support the Fiduciary Duty Counts, (iii) the Trustee is not required to

anticipate and plead around the Defendants' affirmative defenses, and (iv) the Trustee has

standing to assert fiduciary duty claims on behalf of the Debtors' estate.  As a result, the

Defendants' arguments fail.

### 1.    The Defendants Owed Fiduciary Duties to the Debtors

The Defendants argue that under Delaware law, only the named managers and members

of a limited liability company ("LLC") can owe fiduciary duties to the LLC.  This is not true, as

apparent from the plain text of the Delaware LLC Act: "To the extent that, at law *or in equity*, a

member or manager *or other person* has duties (including fiduciary duties) to a limited liability

company . . . ."  6 *Del. C.* § 18-1101 (emphasis added).

In the analogous context of limited partnerships, Delaware courts have recognized that

individuals or entities who are strangers to the partnership agreement can nonetheless owe

fiduciary duties to a partnership and its partners.  *See In re USACafes, L.P. Litig.*, 600 A.2d 43

(Del. Ch. 1991) (denying motion brought by directors of the general partner of a limited

partnership to dismiss fiduciary duty claims asserted against them by the partnership's limited

partners, rejecting directors' argument that they could not owe any fiduciary duties to the limited

partners as a matter of law).  The rationale for recognizing fiduciary duties on the part of non-

parties to the organizational documents has its roots in first principles of fiduciary and trust law,

including that "one who controls property of another may not, without implied or express

13

agreement, intentionally use that property in a way that benefits the holder of the control to the detriment of the property or its beneficial owner." *USACafes*, 600 A.2d at 48.

The Delaware Court of Chancery has consistently applied this rationale when evaluating fiduciary duty claims brought against individuals by, or on behalf of, different types of business entities, including LLCs. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649 (Del. Ch. 2012) (LLC); *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. CIV. A. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009) (LLC); *Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096 (Del. Ch. 2008) (corporation); *In re Primedia Inc. Derivative Litig.*, 910 A.2d 248 (Del. Ch. 2006) (corporation); *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*, No. CIV.A. 16630-NC, 2001 WL 1641239 (Del. Ch. Dec. 4, 2001) (limited partnership); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1181 (Del. Ch. 1999) (limited partnership).

Interpreting the language of the Delaware LLC Act quoted above, the *Feeley* court stated:

> As with a limited partnership, a 'person' may owe fiduciary duties depending on whether that person controls a manager of the LLC or otherwise has a fiduciary relationship to the LLC. The phrase '[t]o the extent that' recognizes these differing possibilities without implying that all members or all persons necessarily always or never owe default fiduciary duties.

62 A.3d at 662–63. Rather than "always" or "never" applying fiduciary duties to individuals with a certain relationship to a business entity, the court noted, "Delaware corporate decisions consistently have looked to who wields control in substance and have imposed the risk of fiduciary liability on the actual controllers." *Id.* at 668. Thus, in an action by the non-managing member of Oculus, an LLC, against the managing member and its human manager, Feeley, for breach of fiduciary duties owed to Oculus, the court rejected Feeley's argument that, as a non-member and non-manager of Oculus, he could not owe any fiduciary duties to the entity. *Id.* at

671 (holding that under *USACafes*, Feeley "c[ould] be reached and potentially held liable for breach of fiduciary duty in his capacity as the controller of [Oculus's managing member]," but dismissing the fiduciary duty claim against him because it was for gross negligence and *USA Cafes* had not been extended beyond duty of loyalty claims).

*Bay Center Apartments* is also instructive.  2009 WL 1124451.  That case involved an LLC (Emery Bay) that was a joint venture between two other LLCs (Bay Center and PKI).  PKI was the managing member of Emery Bay, and was wholly owned and managed by Nevis, an individual.  Bay Center brought claims for breach of fiduciary duty against PKI and Nevis on account of alleged harms to Emery Bay, and Nevis moved to dismiss the claims against him on the grounds that he was not a member or manager of Emery Bay.  *Bay Ctr. Apartments*, 2009 WL 1124451, at *10.  The court denied the motion, recognizing a "*USACafes* duty" on Nevis's part not to use his control over Emery Bay's property to benefit himself at the expense of Emery Bay, and finding that Bay Center had adequately pled a violation of this duty by alleging that "Nevis used his control over Emery Bay's assets to stave off personal liability" by causing Emery Bay to pay down obligations of PKI for which Nevis was liable as guarantor, in derogation of Emery Bay's obligation to make payments on a note it had issued to Bay Center. *Id.*

Here, consistent with Delaware law, the Trustee's Complaint alleges that the Defendants exercised control over the Debtors and their assets, that they assumed fiduciary duties to the Debtors as a result of such exercise of control, and that they exploited this control for personal gain by causing the Debtors to make gratuitous or otherwise excessive payments to the Defendants, including the Dividend, Closing Expenses, IT Payments, Tax Payment, Monthly

15

Management Fees, and OPG Employee Payments, and to make the Fusion Loan.  (Compl. ¶¶ 180–90.)

Against this backdrop, the Defendants' attempt to persuade the Court that they were not fiduciaries of the Debtors is misplaced.  For example, Defendants rely on *North American Steel Connection, Inc. v. Watson Metal Prod. Corp.*, 515 F. App'x 176 (3d Cir. 2013), to argue that under Delaware law, fiduciary duties only apply to managers and controlling members of LLCs. However, in that case the Third Circuit Court of Appeals affirmed a district court's grant of an individual defendant's motion for summary judgment on a breach of fiduciary duty claim because the Plaintiff presented "no evidence" that the individual in fact exercised management authority over the plaintiff.  *Id.* at 183.  Here, by contrast, the Complaint alleges in detail the amount of control that Defendants exerted over the Debtors, which as discussed below is sufficient to get past the pleading stage.  Defendants similarly rely on *Kuroda v. SPJV Holdings, L.L.C.*, No. CIV.A. 4030-CC, 2010 WL 925853 (Del. Ch. Mar. 16, 2010).  However, *Kuroda* is clearly distinguishable because the party against whom the breach of fiduciary duty claim was asserted was a non-managing member "who had no control, power, or authority" over any actions taken by the party asserting the claim.  *Id.* at *7.  Under those circumstances, there would be no basis to recognize any "*USACafes* duties" as discussed above.

In sum, Defendants' argument that they cannot owe fiduciary duties to the Debtors is incorrect.  At this stage of the proceedings, the Court cannot determine as a matter of law that Defendants did not owe any fiduciary duties to Debtors.  Just as the plaintiff in *Bay Center*, the Trustee here has alleged sufficient facts to support a finding that the Defendants owed "*USACafes* duties" to the Debtors and breached those duties by lining their pockets at the Debtors' expense.

### 2.    The Complaint Contains Ample Factual Allegations that Defendants Breached their Fiduciary Duties

The Defendants also challenge the sufficiency of the pleadings as to the Defendants' participation in the alleged fiduciary misconduct.  This argument fails.  The 54-page Complaint alleges in intricate detail the scheme to loot Debtors of millions of dollars and to conceal this looting, as well as the true state of the Debtors' financial and operational condition, from the Debtors' secured lenders.  The Complaint similarly alleges in detail the Defendants' role in this scheme, including, for example:

- the name, status, and relationship to Debtors of each of the OpenGate Defendants (Compl. ¶¶ 26–29);

- the name, job title, and job responsibilities (if any) of each of the Individual Defendants, and that each of the Individual Defendants controlled Debtor's senior management (*id.* ¶¶ 29–34);

- that OpenGate directed the Debtors to make a $2,000,000 Dividend and $868,000 payment for "Closing Expenses" to it with the Debtors receiving nothing of value in return (*id.* ¶¶ 58–59);

- that OpenGate required the Debtors to make a $1,803,516.00 "Tax Payment" to it, which was made for the benefit of OpenGate and for which Debtors did not receive any consideration (*id.* ¶ 60);

- that OpenGate required the Debtors to make "Monthly Management Fee" payments in the amount of $83,333.33 per month as a means to siphon funds from Debtors for the sole benefit of OpenGate (*id.* ¶¶ 61–63);

- that OpenGate required the Debtors to pay salaries and bonuses to OpenGate Employees despite the OpenGate Employees providing no material amount of value or services to Debtors, including an email from Defendant Yook regarding said bonuses (*id.* ¶¶ 64–69);

- the amount of salaries and bonuses paid to OpenGate Employees (*id.* Ex. B);

- that OpenGate, through Defendant Yook, required Debtors to provide a "loan" or "advance fee" to OpenGate portfolio company Fusion Paperboard, which in actuality was simply a payment to Fusion Paperboard to keep it going during a liquidity crisis (*id.* ¶¶ 70–76);

17

- that Defendant Thornton instructed Debtors to back-date financial entries to transform the "advance fee" into a sublease to conceal it from the Debtors' lenders (*Id.* ¶¶ 77–82); and

- that OpenGate required Debtors to make a monthly IT Payment for which Debtors received little services (*id.* ¶ 83).

Taking the detailed factual allegations in the Complaint at face value and deriving all reasonable inferences in the Trustee's favor, the Complaint clearly provides a sufficient factual basis to support a plausible claim for breach of fiduciary duties against Defendants. The cases that Defendants rely on for the contrary proposition are inapposite. For example, the Complaint in *In re Bridgeport Holdings, Inc.*, 388 B.R. 548 (Bankr. D. Del. 2008), did not include (i) the positions that the defendants held, (ii) who the defendants worked for, or (iii) what responsibilities each defendant had. *Id.* at 554. The complaint in *In re AgFeed USA, LLC*, 558 B.R. 116 (Bankr. D. Del. 2016) ("*AgFeed II*"), included a single conclusory statement that the defendant "controlled" an entity involved in a transaction. *Id.* at 122. In *In re DBSI, Inc.*, 445 B.R. 351 (Bankr. D. Del. 2011), the Complaint did not specify what actions constituted the breach of fiduciary duty, and instead merely incorporated by reference the previous *696 paragraph*s of the Complaint. *Id.* at 354. And in *In re Conex Holdings, LLC*, 514 B.R. 405 (Bankr. D. Del. 2014), the Complaint improperly characterized defendants as "directors" of an LLC (of which there are none), and did not provide any specific facts as to each defendant's wrongdoing. *Id.* at 408. The Complaint here does not suffer from any of these deficiencies,[4] and

---

[4] Additionally, the Defendants argue that merely receiving salaries and bonuses cannot form the basis of a claim for breach of fiduciary duty. This argument misunderstands the basis of the Trustee's claims. The OpenGate Employees' receipt of salaries and bonuses was not wrongful *per se*. The problem was that they were receiving salaries and bonuses gratuitously, as part of an overall scheme to loot the Debtors of millions of dollars, then leave them for dead in chapter 7 to the detriment of their employees and other creditors.

it contains sufficient factual allegations to state a plausible claim for relief.  The Trustee is

entitled to proceed to discovery on these claims.

### 3.    The Trustee Need Not Plead Around Affirmative Defenses Based on the LLC Operating Agreements

OpenGate takes the Trustee to task for not attaching the Debtors' operating agreements

to, or otherwise discussing them in, the Complaint, and appears to take the position that, to state

a claim for breach of fiduciary duty against Investors in its capacity as manager of Pennysaver

USA, LLC, the Trustee must anticipate and plead around affirmative defenses that might be

asserted under these operating agreements.  But that is not the law.  As recognized by Judge

Thynge in *Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F.

Supp. 2d 538 (D. Del. 2008), the protection afforded by an exculpatory charter provision is in the

nature of affirmative defense and is not a proper basis for dismissal under Rule 12(b)(6).  *Id.* at

561.  This is consistent with the general prohibition on consideration of documents extrinsic to

the complaint when reviewing motions under Rule 12(b)(6).  *See Higgins*, 281 F.3d at 388.

If OpenGate wishes to assert affirmative defenses based on the Debtors' operating

agreements, it can do so in its answer to the Complaint.  The Court need not "put the cart before

the horse" and resolve these defenses at this stage (nor would it have any basis for doing so,

since OpenGate also did not attach any operating agreement to its Motion).

### 4.    The Trustee Has Standing to Bring Both Fiduciary Duty Counts

The Defendants hone in on the references in Count XVI to duties "to creditors" and

reflexively throw up cites to the Delaware Supreme Court's decision in *North American Catholic

Education Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007).  The Trustee

is well aware of *Gheewalla*, and he of course does not seek to assert any claims that could not

exist under *Gheewalla*. Count XVI is about the Trustee's capacity and standing, and is informed by the position taken by Defendant Nikou in *In re Golden Guernsey Dairy, LLC*, 548 B.R. 410 (Bankr. D. Del. 2015), a case involving another OpenGate portfolio company that was apparently looted and left for dead to the detriment of its employees and other creditors.

As noted above, Count XV asserts fiduciary duty claims in the Trustee's capacity as representative of the Debtors themselves. Count XVI asserts *the same fiduciary duty claims* in the Trustee's capacity as representative of the Debtors' creditors (e.g., by way of the creditor standing conferred on him by the Bankruptcy Code's "strong-arm" power), to the extent that creditors are the beneficiaries of, and thus entitled to enforce, the fiduciary duties owed to the Debtors by reason of the Debtors' insolvency. That the Fiduciary Duty Counts are substantively identical is apparent both from their captions ("Breaches of Obligations and Fiduciary Duties *to Debtors* . . ." (emphasis added)) and from their prayers for relief ("WHEREFORE, the Trustee, *on behalf of the Debtors' estates* . . ." (emphasis added)). The Fiduciary Duty Counts are thus flip sides to the same coin, and are asserted in the alternative out of abundance of caution to the extent that a legal or factual distinction becomes apparent later on in the litigation between "direct" fiduciary duty claims assertable by the Trustee in his capacity as representative of the Debtors themselves, and "creditor-derivative" fiduciary duty claims assertable by the Trustee in his capacity as representative of the Debtors' creditors (but consistent with *Gheewalla*, seeking redress for harms to *the Debtors* themselves).

The distinction between direct and creditor-derivative fiduciary duty claims was made by Defendant Nikou in the *Golden Guernsey* case, where he moved to dismiss the chapter 7 trustee's claims for breach of fiduciary duties because, according to Nikou, (i) insofar as the claims were brought on behalf of the debtors themselves, they were impermissible "deepening

insolvency" claims, and (ii) insofar as the claims were brought derivatively on behalf of creditors, they were barred by a provision of the LLC Act not raised by any of the Defendants here. Under this world view, it would appear that the prepetition looting of a chapter 7 debtor entity was a *damnum absque injuria*—the legal equivalent to punching someone in the dark. Not surprisingly, Judge Gross rejected this worldview in *Golden Guernsey*. 548 B.R. at 413 (stating the Court was "satisfied that Defendants are wrong on their statement of the law"). And to the extent that advancement of this worldview is what the Defendants are gearing up for by seeking dismissal of Count XVI here (to be followed shortly by a request for dismissal on Count XV as an impermissible "deepening insolvency" claim), this Court should reject it as well.

The fact that the Trustee has standing to bring both "direct" and "creditor-derivative" fiduciary duty claims on behalf of the Debtors' estate and creditors is not reasonably disputable. "The Trustee in [a] Chapter 7 proceeding is the sole representative of the estate with the authority to sue and be sued." *Golden Guernsey*, 548 B.R. at 413 (internal citations and quotations marks omitted). "The trustee represents not only the rights of the debtor but also the interests of creditors of the debtor." *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1342–43 (7th Cir. 1987). "Pursuant to 11 U.S.C. § 544 the trustee, in his capacity as a creditor, may bring suit to reach property or choses in action belonging to the estate that will then be distributed to all creditors." *Id.* "Whether the trustee is representing the estate or 'standing in the shoes' of the creditors, he has the duty to marshal the debtor's property for the benefit of the estate, and thus the right to sue parties for recovery of all property available under state law." *Id.*

The Trustee has both direct and creditor-derivative standing to assert the claims set forth in the Fiduciary Duty Counts. The Court should permit both counts to go forward.

### D.    The Complaint States Plausible Claims for Avoidance and Recovery of "Fraudulent" Transfers

Counts I, II, IV, V, VII, VIII, X, and XI of the Complaint (the "State Fraudulent Transfer Counts") seek avoidance and recovery of what are commonly (though as discussed below, inaptly) known as "fraudulent" transfers under section 544 of the Bankruptcy Code, in combination with the UFTA as enacted in Delaware or the Uniform Voidable Transactions Act ("UVTA") as enacted in California, as applicable.[5]  Counts III, VI, IX, and XII of the Complaint (the "Federal Fraudulent Transfer Counts") seek avoidance and recovery of the same transfers under section 548 of the Bankruptcy Code.  The Defendants argue that the State and Federal Fraudulent Transfer Counts are inadequately pled because (i) "fraud" implicates the heightened pleading standard of Federal Rule of Civil Procedure 9(b), and (ii) the State and Federal Fraudulent Transfer Counts are not pled "with particularity" as required by Rule 9(b), for a variety of reasons discussed below.  The Defendants are wrong on both fronts.

### 1.    Rule 9(b) Does Not Apply to the State and Federal Fraudulent Transfer Counts

In 2014, the National Conference of Commissioners on Uniform State Laws (the "ULC"), drafters of the UFTA and its predecessor, the Uniform Fraudulent Conveyances Act ("UFCA"), promulgated a revision of the uniform act, known as the UVTA.  A key change to the uniform act was the substitution of the phrase "voidable transaction" in place of "fraudulent transfer" throughout the act.  The ULC explained this change at length in the comments to the UVTA:

---

[5] As discussed below in Section IV(E), Counts II, V, VIII and XI of the Complaint also seek avoidance and recovery of what are commonly known as "insider preferences" under section 544 of the Bankruptcy Code, in combination with the UFTA as enacted in Delaware.

22

The 2014 amendments change the short title of the Act from "Uniform Fraudulent Transfer Act" to "Uniform Voidable Transactions Act." *The change of title is not intended to effect any change in the meaning of the Act.* The retitling is not motivated by the substantive revisions made by the 2014 amendments, which are relatively minor. Rather, the word "Fraudulent" in the original title, though sanctioned by historical usage, was a misleading description of the Act as it was originally written. *Fraud is not, and never has been, a necessary element of a claim for relief under the Act.* The misleading intimation to the contrary in the original title of the Act led to confusion in the courts. See, e.g., § 4, Comment 10. The misleading insistence on "fraud" in the original title also contributed to the evolution of widely used shorthand terminology that further tends to distort understanding of the provisions of the Act. Thus, several theories of recovery under the Act that have nothing whatever to do with fraud (or with intent of any sort) came to be widely known by the oxymoronic and confusing shorthand tag "constructive fraud." See §§ 4(a)(2), 5(a). Likewise, the primordial theory of recovery under the Act, set forth in § 4(a)(1), came to be widely known by the shorthand tag "actual fraud." *That shorthand is misleading, because that provision does not in fact require proof of fraudulent intent.* See § 4, Comment 8.

UVTA § 15, Comment 1 (emphasis added).

\* \* \*

The phrase "hinder, delay, or defraud" in § 4(a)(1),[6] carried forward from the primordial Statute of 13 Elizabeth, is potentially applicable to any transaction that unacceptably contravenes norms of creditors' rights. Section 4(a)(1) is sometimes said to require "actual fraud," by contrast to § 4(a)(2) & § 5(a),[7] which are said to require "constructive fraud." That shorthand is highly misleading. *Fraud is not a necessary element of a claim for relief under any of those provisions.* By its terms, § 4(a)(1) applies to a transaction that "hinders" or "delays" a creditor, even if it does not "defraud" the creditor. *"Hinder, delay, or defraud" is best considered to be a single term of art describing a transaction that unacceptably contravenes norms of creditors' rights. Such a transaction need not bear any resemblance to common-law fraud.*

---

[6] Section 4(a)(1) of the UVTA corresponds to 6 *Del. C.* § 1304 and Cal. Civil Code § 3439.04, which are relied upon in the State Fraudulent Transfer Counts.

[7] Section 5(a) of the UVTA corresponds to 6 *Del. C.* § 1305(a) and Cal. Civil Code § 3439.05(a), which are relied upon in the State Fraudulent Transfer Counts.

UVTA § 4, Comment 8 (emphasis added, citations omitted).

* * *

> [A] procedural rule that imposes extraordinary pleading requirements on a claim of "fraud," without further gloss, should not be applied to a claim for relief under § 4(a)(1). The elements of a claim for relief under § 4(a)(1) are very different from the elements of a claim of common-law fraud. Furthermore, the reasons for such extraordinary pleading requirements do not apply to a claim for relief under § 4(a)(1). Unlike common-law fraud, a claim for relief under § 4(a)(1) is not unusually susceptible to abusive use in a "strike suit," nor is it apt to be of use to a plaintiff seeking to discover unknown wrongs. Likewise, a claim for relief under § 4(a)(1) is unlikely to cause significant harm to the defendant's reputation, for the defendant is the transferee or obligee, and the elements of the claim do not require the defendant to have committed even an arguable wrong. Cf. Federal Rules of Civil Procedure, Appendix, Form 21 (2010) (illustrative form of complaint for a claim for relief under § 4(a)(1) or similar law, which Rule 84 declares sufficient to comply with federal pleading rules).

UVTA § 14, Comment 10 (some citations omitted).

None of the cases cited by the Defendants as support for the proposition that Rule 9(b)'s requirement that "fraud" be pleaded "with particularity" applies to so-called "fraudulent transfer" claims discuss—or indeed, even acknowledge—the ULC's guidance on this issue.

The Trustee respectfully submits that the considered opinion of the drafters of the UVTA, UFTA, and UFCA (the latter two of which served as the basis for section 548 of the Bankruptcy Code), that "fraud" has *never been* a necessary element of a cause of action under those statutes, is relevant and highly probative on the issue of the applicable pleading standard.

But even if it were not, Form 21 in the Federal Rules of Civil Procedure (discussed above) is consistent with the ULC's understanding that the pleading standard for a so-called "fraudulent" transfer for "actual fraud" is not unusually demanding. *See* UVTA § 14, Comment 10 (citing Fed. R. Civ. P. 84, Form 21). And Judge Lindsey's holding in *OHC Liquidating Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) that

Rule 9(b) applies to claims for avoidance of so-called "constructively fraudulent" transfer, which is relied upon heavily by the Defendants, is apocryphal—other Courts in this District, including this Court, have not reached the same conclusion as Judge Lindsey. *See, e.g., Lipscomb v. Clairvest Equity Partners Ltd. P'ship (In re LMI Legacy Holdings, Inc.)*, Adv. No. 15-51069, 2017 Bankr. LEXIS 1150, *44-45 (Sontchi, J.) (Bankr. D. Del. Apr. 27, 2017) ("[I]t is accepted that constructive fraud claims are analyzed under Rule 8, and need not comply with the heightened pleading standards under Rule 9(b)." (internal footnote omitted) (citing *Astropower Liquidating Trust v. Xantrex, Inc. (In re AstroPower Liquidating Trust)*, 335 B.R. 309, 333 (Bankr. D. Del. 2005) (Walrath, J.) (declining to follow *Oakwood Homes*))).

The upshot of the foregoing is this:  First, to adequately plead "actual fraud" the Trustee need only aver generally that the transfers in question were made with "intent to hinder, defraud, or delay" creditors, which he has done (*compare* Compl. ¶¶ 94, 105, 123, 131, 142, & 149 *with* Fed. R. Civ. P. 84, Form 21 ¶ 4);[8] second, to adequately plead "constructive fraud" the Trustee need only "set forth the facts with sufficient particularity to apprise the [Defendants] fairly of the charges made against [them] so they] can prepare an adequate answer," *AstroPower*, 335 B.R. at 333 (internal quotation marks, citation omitted), which he also has done, as discussed below.

### 2.     The Trustee Need Not Specify Which Debtor Made Each Challenged Payment to State a "Plausible" Claim for Relief

The Defendants argue that the general allegation that "the Debtors" made the transfers challenged in the State and Federal Fraudulent Transfer Counts, without specifying *which* Debtor(s) made such transfers, is fatal to the Complaint.  For this proposition they rely primarily

---

[8] *Cf.* Fed. R. Civ. P. 9(b) (stating that "intent . . . and other conditions of a person's mind may be alleged generally").

on two cases, both of which were decided (at least in part) using a heightened Rule 9(b) pleading

standard and, in any event, are otherwise factually distinguishable.

In *In re AgFeed USA, LLC*, 546 B.R. 318 (Bankr. D. Del. 2016) ("*AgFeed I*"), Judge

Shannon dismissed a fraudulent transfer claim for "constructive fraud" relating to transfers under

an employment agreement where "[t]he complaint fail[ed] to allege specific facts relating to *the*

*date of any of the transfers, the amount of any of the transfers* or the transferor of any of the

transfers." *Id.* at 336 (emphasis added).  Following amendment of the complaint, Judge Shannon

*again* dismissed this claim because "[t]he only new facts alleged" were (i) the aggregate amount

of the challenged transfers over a 19-month period, and (ii) the "information and belief" that the

transferee was paid "periodically on a monthly or bi-weekly basis." *AgFeed II*, 558 B.R. at

129-30.  Here, by contrast, the Complaint provides detailed schedules setting forth the date and

amount of all Management Fees paid and OPG Employee Payments made, (Compl. Ex. A & B),

and the timing and amount of the challenged Dividend, Closing Expenses, Tax Payment, and IT

Payments are set forth in the narrative paragraphs of the Complaint, (*id.* ¶¶ 58-60 & 84).

In *AgFeed I*, Judge Shannon also dismissed a fraudulent transfer claim for "actual fraud"

relating to fees paid to an entity controlled by the wife of the debtor's CEO, where the complaint

alleged the fees were paid by the debtor "*and* related entities *or* by entities with a business

relationship to" the debtor (emphasis added), but did not specify which entity was the transferor.

546 B.R. at 337.  Judge Shannon noted that, as pleaded, the complaint left open the possibility

that the transferor of any given transfer was (i) the debtor, (ii) a related entity, or (iii) an entity

with a business relationship to the debtor, which he found fell "well short of the particularity

requirements of FRCP 9(b)."  *Id.*  But he found that the complaint *did* plead sufficient facts to

support a fraudulent transfer claim for "constructive fraud" based on the same fees, by virtue of

an exhibit to the complaint that identified "the date, amounts, source and transferee" of each of the fee payments.  *Id.*  This was so even though the "source" set forth in the exhibit (a true and accurate copy of which is attached as <u>Exhibit A</u> hereto), was expressed generally as "AgFeed Industries [the lead debtor] or Affiliate."  Here, the Complaint states that the transfers at issue were made by *the Debtors*—not some unnamed affiliate or business partner of the Debtors who may or may not be a debtor.  Thus, if anything, the Complaint here provides more and better information in support of the State and Federal Fraudulent Transfer Claims than the complaint that was found to have sufficiently pleaded "constructive fraud" claims in *AgFeed I*.

The other case relied upon by the Defendants for the proposition that identification of the specific transferor is required is *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232 (Bankr. E.D. Mich. 2009).  In that case, the court dismissed a fraudulent transfer claim for "actual fraud" where "the Complaint fail[ed] to state the specific name of the [debtor] transferor, *the transfer date(s), and each of the transfer amount(s)*," with the "transfer date [] specified only as occurring 'within six years prior to the Petition Date;' and the amount of a transfer(s) at issue [] pled only in the aggregate, with amounts that range from $65,000 to a high of $314.5 million." *Id.* at 263 (emphasis added).  The court was expressly applying the heightened Rule 9(b) pleading standard, which it found required identification of the specific debtor-transferor as well as the specific timing and amounts of transfers.  *Id.* at 259-63.  This being said, the failure to specify dates and amounts of transfers was presumably more determinative than the failure to specify the debtor-transferors, because the complaint at issue also included a count seeking substantive consolidation of the debtors, which the court permitted to go forward (and which, if successful, would presumably have obviated any determination of which debtor made the transfer(s) at issue).  *See id.* at 269.

Circling back to the purpose of the pleading standards in the first place, which is to provide fair notice to defendants, it would make little sense for the Court to throw out the State and Federal Fraudulent Transfer Counts because they do not specify *which* Debtor made each of the challenged transfers.  The Complaint provides the dates and amounts of these transfers, and as noted above, it is ultimately immaterial *which* Debtor made them, given the Complaint expressly alleges that *no Debtor* received reasonably equivalent value in exchange for them.  If the Defendants wish to challenge whether they received transfers from the Debtors on those dates or in those amounts, or whether reasonably equivalent value was provided to the Debtors in exchange, they are free to do so.  And as between them and the Trustee, they are better suited to provide this information.  *See Burch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 33-34 (Bankr. D. Del. 2011) (Sontchi, J.) (noting a trustee is "generally afforded greater liberty in pleading" since he is "a third-party outsider to the debtor's transactions"); Fed. R. Civ. P. 8(e) (requiring pleadings to be "construed so as to do justice").

### 3.    Any "Presumption" of Reasonably Equivalent Value for the OPG Employee Payments is Overcome by Well-Pleaded Facts

The Defendants argue the State and Federal Fraudulent Transfer Counts seeking avoidance and recovery of the OPG Employee Payments fail as a matter of law because (i) salary payments are *presumed* to be reasonably equivalent value for the services provided by the employee, and (ii) the Complaint does not allege sufficient facts to overcome this presumption.  As support for the former proposition, the Defendants cite cases decided either after an evidentiary hearing or on summary judgment after development of an evidentiary record.  As support for the latter proposition, the Defendants cite two decisions that make no mention of presumptions, which found the fraudulent transfer claims at issue insufficient for reasons not relevant to this case.

28

In *AgFeed II*, as an additional ground for dismissal of the fraudulent transfer claim for transfers under the employment agreement discussed in Section IV(D)(2) above, Judge Shannon noted that the complaint "d[id] not allege that [the transferee] received any compensation that he was not owed under the Employment Agreement," but rather stated that the transferee's salary was twice that of his predecessor, with "no[] descri[ption] of how or why [this] salary was excessive." 558 B.R. at 130 ("[T]he Trustee in conclusory fashion argues that simply because [the transferee] made twice as much as the previous CEO, the payments must be excessive."). The Complaint here, by contrast, does not allege that there was any employment agreement between the Debtors and the OpenGate Employees—rather, it alleges that the OpenGate Employees were "placed on the Debtors' payroll" at the instruction of OpenGate. (Compl. ¶¶ 30, 31, 33 & 34.) The Complaint goes on to explain precisely why the Debtors received less than reasonably equivalent value for the OPG Employee Payments they made: *the Debtors received no value*, as "[n]one of the OpenGate Employees worked or performed any material amount of services for the Debtors, nor did any of [them] provide any material value to the Debtors." (Compl. ¶ 65.)

In *In re Pitt Penn Holding Co.*, 484 B.R. 25 (Bankr. D. Del. 2012), Judge Shannon dismissed a fraudulent transfer claim for recovery of compensation paid to a former executive, where the complaint "fail[ed] to specifically identify [the executive]'s compensation" and stated merely that he was paid "far more than justified," without further elaboration. *Id.* at 53-54. Here, by contrast, the Complaint identifies the amount and timing of the OPG Employee Payments, and explains precisely what the Debtors received in exchange—i.e., *nothing of value*.

In the case at bar, the Defendants assert that the Trustee's allegation that the OpenGate Employees performed "no material work" is conclusory and must be bolstered with additional

facts as to the OpenGate Employees' positions, roles, and responsibilities with respect to the

Debtors.  But it is unclear how one would go about bolstering a null set with additional facts—if

the OpenGate Employees performed no material services, then is it really necessary to enumerate

the material services they did *not* provide?  The Trustee could perhaps bolster his allegations by

amending the Complaint to include reference to a September 26, 2014, internal corporate

organizational chart in his possession, which identifies more than 930 Pennysaver employees and

maps out their respective chains of command and reporting over thirty sub-charts, but

conspicuously omits mention of any of the OpenGate Employees, who by that time had been on

the Debtors' payroll for up to six months.  But doing so would not tell the Defendants anything

they do not already know.  If the Defendants wish to challenge whether the OpenGate

Employees provided material services for the Debtors, or otherwise provided reasonably

equivalent value in exchange for the OPG Employee Payments, they are free to do so.  And

again, as between them and the Trustee, they are certainly better suited to provide this

information.  *See USDigital*, 443 B.R. at 33-34 (noting a trustee is "generally afforded greater

liberty in pleading" since he is "a third-party outsider to the debtor's transactions"); Fed. R. Civ.

P. 8(e) (requiring pleadings to be "construed so as to do justice").

### E.    The Complaint States Plausible Claims for Avoidance and <u>Recovery of Preferences and Insider Preferences</u>

Counts II, V, VIII and XI of the Complaint (the "<u>State Preference Counts</u>") seek

avoidance and recovery of what are commonly known as "insider preferences" under section 544

of the Bankruptcy Code, in combination with the UFTA as enacted in Delaware.  Counts XIII

and XIV of the Complaint (the "<u>Federal Preference Counts</u>") seek avoidance and recovery of

preferences under section 547 of the Bankruptcy Code.  The Defendants argue that the State and

Federal Preference Counts are inadequately pled because (i) the Complaint's allegations

regarding the Defendants' "insider" status are conclusory; (ii) the Complaint does not specify which Debtor made the transfers at issue; and (iii) the Complaint does not allege the nature and amount of any antecedent debt.  These arguments are unavailing.

### 1.    The Complaint Adequately Pleads Defendants' "Insider" Status

OpenGate and the OpenGate Employees argue the Complaint fails to adequately plead their "insider" status,[9] which factors into both the State and Federal Preference Counts.

The definitions of "insider" under the UFTA and Bankruptcy Code are substantially identical. *Compare* 6 *Del. C.* § 1301(7) *with* 11 U.S.C. § 101(31).  The definitions provide that the term insider "includes" persons having certain specific relationships with the debtor (so-called "statutory insiders"), implying that other persons may also fit the bill (so-called "non-statutory insiders").  *Id.*  The statutory insiders category includes (i) directors, officers, managing agents, and persons in control of the debtor, (ii) any "affiliate" of the debtor,[10] and (iii) any "insider of an affiliate as if such affiliate were the debtor."  *Id.*  Inclusion in the non-statutory insiders category hinges on "whether there is a close relationship between [the] debtor and [the person in question] and anything other than closeness to suggest that any transactions were not conducted at arm's length."  *Shubert v. Lucent Techs. Inc. (In re Winstar Communs., Inc.)*, 554 F.3d 382, 396-97 (3d Cir. 2009) (internal quotation marks, citation omitted).  Against this backdrop, the apparent befuddlement of OpenGate and the OpenGate Employees as to the nature

---

[9] By virtue of their Joinder, Nikou and Yook join in these arguments, but the Joinder makes no sense in that regard because Nikou and Yook are not the subject of any Counts of the Complaint for which their status as "insiders" would be necessary to sustain the Trustee's cause of action.

[10] The definitions of the term "affiliate" are also substantially identical under the UFTA and Bankruptcy Code, and include any "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor."  6 *Del. C.* § 1301(1)(a); 11 U.S.C. § 101(2)(A).

of their insider status is, itself, befuddling.  But to the extent necessary to connect the dots, here

goes:

- **Pennysaver Investors, LLC** ("Investors") is a *statutory insider* of the Debtors because it
  (i) is an affiliate (i.e., direct or indirect owner, as applicable) of the Debtors (Compl.
  ¶ 27); (ii) is an insider of the other OpenGate defendants; and (iii) is an insider of Andrew
  Nikou (as an affiliate owned 57.34% by Nikou), who is himself an affiliate of the Debtors
  (by virtue of his stake in Investors) (Compl. ¶ 29).

- **OpenGate Capital Management, LLC** ("Management") is a *statutory insider* of the
  Debtors because it is (i) an affiliate (i.e., indirect owner) of the Debtors (Compl. ¶27);
  (ii) an insider of Debtors' affiliate Investors (as both an affiliate and the manager of
  Investors) (Compl. ¶¶ 26 & 28); (iii) an insider of the other OpenGate defendant, which
  as noted below is an affiliate of the Debtors; and (iv) the ostensible managing agent of the
  Debtors (Compl. ¶ 28).  Management is also a *non-statutory* insider because of its close
  relationship with the Debtors (as their ostensible manager) and the numerous OpenGate
  self-interested transactions that went down on its watch, which at a minimum "suggest"
  less-than-arm's-length dealing with the Debtors.

- **OpenGate Capital Group, LLC** ("Capital") is a *statutory insider* of the Debtors because
  it is (i) an affiliate (i.e., indirect owner) of the Debtors (Compl. ¶ 11); and (ii) an insider
  of Debtors' affiliates Investors (as an affiliate of both Investors and Investors' affiliate
  and manager, Management), Management (as an affiliate), and Nikou (as an affiliate)
  (Compl. ¶¶ 26, 28 & 29.).  Capital is also a *non-statutory* insider because of its close
  relationship with the Debtors (as its equity sponsor and owner of Management, the
  Debtors' ostensible manager), as well as the numerous transfers and other transactions
  entered into by the Debtors for the benefit of Capital, its employees, and its portfolio
  companies, which at a minimum "suggest" less-than-arm's-length dealing with the
  Debtors.

- **The OpenGate Employees** are *statutory insiders* because they are insiders of the
  OpenGate entities (as officers), which are the Debtors' affiliates.  (Compl. ¶¶ 30, 31, 33
  & 34.)  They are also *non-statutory insiders* because, among other reasons, their receipt
  of salaries and bonuses from the Debtors while performing no material services for them
  at a time when the Debtors' employees were foregoing bonuses (or being laid off), at a
  minimum "suggests" less-than-arm's-length dealing with the Debtors.

The foregoing conclusions are all apparent from the face of the Complaint.  Accordingly,

the requests of OpenGate and the OpenGate Employees to dismiss the State and Federal

Preference Counts on the basis of an alleged failure to plead "insider" status should be denied.

*See Lipscomb*, 2017 Bankr. LEXIS 1150 at *27-30 (finding complaint adequately alleged insider

status against private equity firm (Clairvest) and its affiliates, noting "Clairvest erroneously

predicates insider status—statutory or non-statutory—on whether or not it 'controlled' [the debtor, but] 'control' of the debtor is not outcome determinative with respect to a finding of insider status").

### 2.    Again, the Trustee Need Not Specify Which Debtor Made Each Challenged Payment to State a "Plausible" Claim

The Defendants argue that the general allegation that "the Debtors" made the transfers challenged in the State and Federal Preference Counts, without specifying which Debtor(s) made such transfers, is fatal to the Complaint.  For this proposition they rely primarily on two decisions by Judge Walrath[11] that follow the rule articulated by Judge Walsh in *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, where he held that, to survive Rule 12(b)(6) dismissal, a preference complaint needed to identify each preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee, and (iv) amount.  288 B.R. 189, 192 (Bankr. D. Del. 2003).  This Court has considered the *Valley Media* rule on several occasions and has consistently found that it "is *not* the controlling standard to judge a motion to dismiss a preference complaint under Rule 12(b)(6)," *Forman v. Dragon Key Co. (In re Linens Holding Co.)*, Adv. Pro. No. 11-50121, 2011 Bankr. LEXIS 5015, *2-3 and n.1 (Bankr. D. Del. Dec. 29, 2011) (emphasis added), and that it "should *not* be strictly applied," *Anderson News, LLC v. News Group, Inc. (In re Anderson News, LLC)*, Adv. No. 11-53979, 2012 Bankr. LEXIS 3855, *10-12 (Bankr. D. Del. Aug. 22, 2012) (emphasis added).  *Accord Giuliano v. Haskett (In re MCG Ltd. P'ship)*, 545 B.R. 74, 82 (Bankr. D. Del. 2016) (holding the *Valley Media* standard "is not to be strictly applied").

---

[11] *In re Washington Mutual, Inc.*, Adv. No. 10-53158, 2013 WL 3757330, *3 (Bankr. D. Del. July 16, 2013); *In re Crucible Materials Corp.*, Adv. No. 10-55178, 2011 WL 2669113, *3 (Bankr. D. Del. July 6, 2011).

Judge Walsh himself appeared to agree, because in *OHC Liquidating Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510 (Bankr. D. Del. 2006), he denied the defendant banks' motion to dismiss a preference action, which was premised upon a strict reading of *Valley Media*'s requirement to identify the transferor, reasoning:

> The complaint identifies the Oakwood Companies as the transferors. The Oakwood Companies, as defined by the complaint, include the Debtor and all of its subsidiaries and affiliates. As the defendants correctly state, the Oakwood Companies include certain non-debtor subsidiaries and affiliates. Because not all transferors are Debtor entities, the defendants seek to dismiss the preference action.
>
> *Although the complaint fails precisely to identify the transferors' names, it gives fair notice as to their identities. This is all that is required under Rule 8(a).* Further, this Court will infer, as the plaintiff suggests, that the Oakwood Companies operated as a unit with little to no distinction between those that were Debtors and those that avoided bankruptcy. Also, the Court will infer that some of the transferors were the alter egos of some of the Debtors.[12] In addition, the complaint creates the inference that these transfers were either made directly by a Debtor entity or were made from property in which the Debtors had an interest. In other words, the Court will permit the plaintiffs to pursue these details in discovery. At this early stage, such significant factual detail is not required.

*Oakwood Homes*, 340 B.R. at 522-23 (emphasis added; internal quotation marks, citations omitted). If a general reference to the debtors and their affiliates (including *non*-debtor affiliates) in *Oakwood Homes* was enough to provide non-insider bank defendants fair notice of the identities of the transferors of the alleged preferences, then the more precise reference the five

---

[12] The Trustee notes that these same inferences would apply perforce to the OpenGate entities here, who argue that the Complaint's lumping them together under the unitary term "OpenGate" is improper. The Complaint's allegations regarding "OpenGate" are sufficient to provide fair notice of the identities of the entities involved in those allegations, particularly given the Complaint's express allegations that all the OpenGate entities were under the common control of Nikou. (Compl. ¶ 29.)

Debtor entities in the Complaint here is certainly enough to provide the insider Defendants fair notice of the transferors' identities.

### 3.     The Allegations Regarding "Antecedent Debt" Are Sufficient

Invoking another element of the *Valley Media* rule, the Defendants argue that the Complaint fails to plead adequate detail regarding the nature and amount of the "antecedent debts" on account of which the challenged payments were made.  Specifically, the Defendants argue that the allegations that there were antecedent debts directly contradicts the allegations that the Debtors received less than reasonably equivalent value for the challenged transfers.  But there is no contradiction.

The State and Federal Preference Counts are alternative theories of recovery that complement the State and Federal Fraudulent Transfer Counts.  In the State and Federal Fraudulent Transfer Counts, the Trustee asserts primarily that the challenged transfers were gratuitous and thus recoverable under the UFTA, UVTA, and the Bankruptcy Code.  To the extent the transfers were *not* gratuitous, and instead were made in satisfaction of some pre-existing obligation on the part of the Debtors,[13] then "value" was given.  *See* 6 *Del. C.* § 1303(a) (providing that satisfaction of an antecedent debt constitutes "value").  But whether this value was "reasonably equivalent" to the amount of the transfer remains an open question, particularly where the underlying obligation itself may be subject to avoidance under UFTA, UVTA, or the Bankruptcy Code.  To the extent that (i) the challenged transfers were in satisfaction of a pre-existing obligation *and* (ii) that obligation is not itself avoidable and constitutes reasonably

---

[13] Case in point: Defendants' argument that OPG Employee Payments were salary and therefore presumed to have been in exchange for reasonably equivalent value, which is addressed above.

equivalent value for the challenged transfers, the Trustee brings the State and Federal Preference Counts as an alternative theory of recovery for transfers made within the year prior to the Petition Date as preferences.  This is not rocket science.  It is routine practice in bankruptcy litigation.

Anticipating the Trustee's obvious retort that his allegations of an "antecedent debt" are in the nature of alternative pleading, OpenGate preemptively cites an Eastern District of New York patent case for the proposition that the antecedent debt allegations are not alternative pleading, but instead an "asserted factual premise entirely inconsistent with the Trustee's other claims."  (OpenGate Op. Br. at 10 (citing *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016).)  But *Carson Optical* is inapposite.  In that case, the plaintiff sued for induced infringement under section 271(b) of the Federal Patent Act.  A required element of an induced infringement cause of action is the defendants' knowledge that the induced acts were infringing, which can be satisfied by showing either actual knowledge or willful blindness on the part of the defendant.  The plaintiff alleged both actual knowledge and willful blindness on the part of the defendant, and the defendant moved to dismiss, challenging the sufficiency of these allegations.  The court denied the motion to dismiss, finding the plaintiff had adequately pled willful blindness.  In the passage relied upon by OpenGate, the court observed that the plaintiff's allegations regarding actual knowledge were contradicted by its more specific allegations regarding willful blindness.  *Carson Optical*, 202 F. Supp. 3d at 255.  But the actual knowledge and willful blindness allegations there were not alternative theories of recovery—rather, they were alternative factual predicates supporting the same theory of recovery (i.e., induced infringement).  And they were in fact contradictory, since it is not possible to *both* know something *and* be blind to it.  Here, by contrast, the allegations that the Debtors received less

than reasonably equivalent value for the challenged transfers and that the challenged transfers were on account of antecedent debts (i) are in support of alternative theories of recovery and (ii) are not inherently contradictory (since they could both conceivably be true at the same time with respect to the same transfer).[14]

### F.    The Accounting Count is Proper

Defendants seek dismissal of Count XVII of the Complaint solely on the grounds that an accounting is an equitable remedy for breach of fiduciary duties, and thus is not viable absent a fiduciary relationship.  This argument is premised upon the Defendants' assertion that they did not owe any fiduciary duties to the Debtors or their creditors.  But as discussed in Section IV(C) above, the Complaint states plausible claims for breach of fiduciary duties against all Defendants.  And an accounting would be a proper remedy for this breach.  Accordingly, the Could should deny the Defendants' request to dismiss Count XVII of the Complaint.

### G.    The 502(d) Count is Proper

Defendants seek dismissal of Count XVIII solely on the grounds that it is "premature" because no judgment has yet been entered against them.  The authority cited for this argument traces its provenance back to Judge Walrath's rhyming opinion in *In re Worldwide Direct, Inc.*, which denied an omnibus claim objection that had sought disallowance of proofs of claim pursuant to section 502(d) of the Bankruptcy Code based solely on the claimants' receipt of

---

[14] Interestingly, the Defendants seek to whipsaw the Trustee by *relying on* the "antecedent debt" allegations to obtain dismissal of the fraudulent transfer counts (by arguing that, in light of those allegations, there is a presumption that the OPG Employee Payments were made for reasonably equivalent value), while simultaneously *disavowing* the allegations to obtain dismissal of the preference counts (by arguing that, in light of the allegations lack of reasonably equivalent value, there can be no antecedent debt).  This would be akin to the patent defendant in *Carson Optical* telling the court, "It is not possible that I was *both* knowledgeable *and* willfully blind, therefore I was neither"—pure sophistry.

payments during the preference period prepetition, though the debtors had not yet filed (much less litigated to judgment) adversary proceedings against the claimants.  No. 99-108(MFW), 2000 WL 33712474 (Bankr. D. Del. Nov. 22, 2000) ("Section 502(d) permits disallowing a claim from whom money is due, but to determine the creditors' liability the Debtors must sue. Before we may pronounce that a claimant is liable, Debtors must commence an adversary complaint which is viable.").  The result in *Worldwide Direct* makes sense in the context of an omnibus claim objection, but little sense in the context of an adversary proceeding.

The relief sought in the Complaint here is entry of a judgment against the Defendants, which would provide the predicate for disallowance of claims under section 502(d), much in the same way as avoidance of a transfer under section 544, 547, or 548 provides the predicate for recovery of the avoided transfer under section 550.  Thus, by the Defendants' reasoning, a claim for recovery of avoided transfers under section 550 of the Bankruptcy Code would also have to be dismissed as premature until the plaintiff had obtained judgment avoiding the transfers under section 544, 547, 548, or 549, and another adversary proceeding would have to be commenced to recover any avoided transfers.  But that is not the law, and claims for section 550 relief are routinely (indeed, typically) included in the same complaint with the avoidance claims themselves.

The Individual Defendants also argue the section 502(d) count is premature because they have not filed any claims in the Debtors' bankruptcy cases.  This elevates form over substance. The Complaint seeks recovery from the Individual Defendants under section 550, which could potentially give rise to a claim that would be subject to disallowance under section 502(d).  *See* 11 U.S.C. § 502(h) (providing that a "claim arising from the recovery of property under section . . . 550" may be disallowed under section 502(d) the same as if it had arisen prepetition).  In

addition, if the Individual Defendants intend to assert counterclaims (which the Trustee does not know and could not have known when he filed the Complaint), those claims may be subject to disallowance under section 502(d).  Retaining the section 502(d) count serves the purpose of consolidating all potential disputes between the parties in a single proceeding.  Dismissing the count now only to have the Trustee seek to add it back later (or worse, to require the Trustee to bring a separate proceeding to obtain 502(d) relief) would be inefficient.  Accordingly, the Court should deny the Defendants' request to dismiss Count XVIII of the Complaint.

*[Remainder of page intentionally left blank.]*

## IV.    CONCLUSION

WHEREFORE, the Trustee respectfully requests the Court deny the Motions and Joinder and order such other and further relief as the Court may deem just and proper.  Alternatively, if the Court is inclined to grant the Motions and Joinder in whole or in part, the Trustee respectfully requests leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that courts must permit a curative amendment unless an amendment would be inequitable or futile).

Dated: January 15, 2018
Wilmington, Delaware

Respectfully submitted,
DRINKER BIDDLE & REATH LLP

*/s/ Patrick A. Jackson*
Steven K. Kortanek (Del. Bar No. 3106)
Patrick A. Jackson (Del. Bar No. 4976)
222 Delaware Ave., Suite 1410
Wilmington, DE 19801-1621
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
steven.kortanek@dbr.com
patrick.jackson@dbr.com

-and-

Robert K. Malone (admitted *pro hac vice*)
Frank F. Velocci (admitted *pro hac vice*)
Kevin H. DeMaio (admitted *pro hac vice*)
600 Campus Dr.
Florham Park, New Jersey 07932-1047
Telephone: (973) 549-7000
Facsimile: (973) 360-9831
robert.malone@dbr.com
frank.velocci@dbr.com
kevin.demaio@dbr.com

*Special Litigation Counsel to
Don A. Beskrone, Trustee*

**EXHIBIT A**

**Excerpt from Complaint in *AgFeed I***

# Transfers to Gothner and Related Transferees Avoidable Pursuant to 11 U.S.C. sec. 548

| Date | Transferee | Source | Amount ($) |
|------|-----------|--------|-----------:|
| 3/13/2012 | Minds Island - Checking Account | AgFeed Industries or Affiliate | 12,000 |
| 8/4/2011 | Minds Island - Checking Account | AgFeed Industries or Affiliate | 12,000 |
| 9/29/2011 | Minds Island - Checking Account | AgFeed Industries or Affiliate | 8,000 |

Total      32,000